# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1711

State of Minnesota,
Respondent,

vs.

Kenneth Jagger Crawford,
Appellant.

**Filed October 14, 2024**
**Reversed and remanded**
**Larkin, Judge**

Washington County District Court
File No. 82-CR-21-4008

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kevin M. Magnuson, Washington County Attorney, Andrew T. Jackola, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for Crawford)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Harris, Judge.

## SYLLABUS

The district court is without authority to disregard the mandatory-minimum sentence in Minn. Stat. § 152.021, subd. 3(b) (2020), which applies to certain repeat offenders who are convicted of a first-degree controlled-substance crime.

# OPINION

**LARKIN**, Judge

Appellant challenges the validity of his guilty plea to first-degree controlled-substance possession, arguing that his plea was invalid. Specifically, he argues that his plea was unintelligent because he was not aware that imposition of a mandatory-minimum term of imprisonment was a direct consequence of his plea or that the district court was not authorized to disregard that mandatory-minimum sentence. Instead, he was led to believe that the district court had authority to grant his request for a downward-dispositional sentencing departure, based on the state's assertion that, because it had not invoked the mandatory-minimum sentencing provision in the charging document, that provision did not restrict the district court's sentencing discretion. Because the district court was not authorized to disregard the relevant mandatory-minimum sentence, appellant's guilty plea was unintelligent and invalid. We therefore remand to allow appellant to withdraw his guilty plea.

## FACTS

Appellant Kenneth Jagger Crawford appeared before the district court on charges of first-degree controlled-substance possession and fleeing a police officer in a motor vehicle. Crawford's attorney informed the district court and respondent State of Minnesota that Crawford intended to plead guilty as charged and to seek a downward-dispositional sentencing departure. The guilty pleas would be proffered as a "straight plea," that is, there

2

was no plea agreement or sentencing agreement with the state.[1]  Neither the district court nor the state objected to Crawford's intent to seek a downward-dispositional departure.

At previous hearings, the parties and the district court discussed that if Crawford were convicted of the underlying charge of first-degree controlled-substance possession, a mandatory-minimum sentence of 48 months would be required if the offense had been charged with reference to a prior first-degree controlled-substance conviction.  However, the state asserted that even though Crawford had a prior controlled-substance conviction, which triggered application of the mandatory-minimum sentence, the district court was not required to impose the mandatory-minimum sentence if the state did not charge Crawford's first-degree controlled-substance offense as a subsequent controlled-substance offense, that is, with reference to Crawford's prior controlled-substance conviction.  The district court and defense counsel accepted that assertion.

Consistent with its position, the state made several statements in district court indicating that the mandatory-minimum sentence *could* have applied if the state had charged the underlying controlled-substance offense with reference to the prior controlled-substance conviction.  But at the plea hearing, no one mentioned the mandatory-minimum sentence during discussions regarding Crawford's intent to plead guilty as charged and to request a downward sentencing departure.  Moreover, the mandatory-minimum sentence was not mentioned during Crawford's waiver of trial rights

---

[1] Crawford had other first-degree controlled-substance offenses pending in a separate file, with a different date of offense.  The state voluntarily dismissed those charges after Crawford was sentenced on the underlying offenses in this case.

3

in support of his guilty plea. Finally, the district court told Crawford that it would consider his lawyer's request for "something less than the guidelines."

Crawford tendered, and the district court accepted, his guilty pleas to first-degree controlled-substance crime and fleeing a police officer in a motor vehicle. The guilty pleas were tendered remotely, and Crawford and his attorney were in different locations. Thus, Crawford offered an oral waiver of his trial rights in support of his guilty pleas, and defense counsel requested permission from Crawford to sign the petition on Crawford's behalf. The district court indicated that it would receive the petition, but the record does not contain a petition to plead guilty.

As planned, Crawford requested a downward-dispositional or durational sentencing departure. As to a dispositional departure, that is, probation instead of imprisonment, Crawford's motion papers identified his acceptance into the Minnesota Adult and Teen Challenge Program as one supporting ground. The state argued against Crawford's request on the merits and did not mention the mandatory-minimum sentence. Defense counsel argued in favor of a downward sentencing departure, and Crawford addressed the district court, "beg[ging]" the court to put him on probation instead of sending him to prison.

The district court rejected Crawford's request for a downward sentencing departure on the merits after determining that substantial and compelling circumstances did not justify a departure. The district court entered judgments of conviction on the admitted offenses and imposed presumptive, concurrent prison sentences as follows: 125 months for the first-degree controlled-substance offense and 19 months for the fleeing offense.

This appeal follows.

4

Was Crawford's guilty plea unintelligent and therefore invalid because he was misinformed that the district court could disregard the mandatory-minimum sentence applicable to his first-degree controlled-substance conviction?

**ANALYSIS**

Crawford challenges the validity of his guilty plea to first-degree controlled-substance possession.[2] A defendant may challenge the constitutional validity of a guilty plea for the first time on direct appeal. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. A defendant bears the burden of showing his plea was invalid. Assessing the validity of a plea presents a question of law that [appellate courts] review de novo." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citations omitted).

"The purpose of the requirement that the plea be intelligent is to [ensure] that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). The intelligence requirement concerns the direct consequences of a plea and conviction. *Raleigh*, 778 N.W.2d at 96. "[A] direct consequence is one that has a definite, immediate and automatic effect on the range of a defendant's punishment." *Kaiser v. State*,

---

[2] Crawford's argument that his guilty plea was invalid focuses on his plea to first-degree controlled-substance possession and the district court's authority to grant a downward-dispositional departure. We therefore limit our analysis to that issue. Although Crawford argues that his guilty plea was also involuntary, we do not address that issue because we ultimately conclude that his guilty plea to first-degree controlled-substance possession was unintelligent and therefore invalid.

641 N.W.2d 900, 904 n.6 (Minn. 2002). Consistent with those principles, the district court must ensure that defense counsel has told the defendant, and the defendant understands, that "[i]f a minimum sentence is required by statute, the judge may impose a sentence of imprisonment" not less than the amount specified in the statute. *See* Minn. R. Crim. P. 15.01, subd. 1(6)(j).

Crawford contends that he was misinformed regarding the direct consequences of his guilty plea and that his plea was therefore unintelligent and invalid. Specifically, he argues that a mandatory-minimum prison sentence of at least 48 months was a direct consequence of his guilty plea, that the district court had no authority to disregard that mandatory-minimum sentence, and that the district court therefore had no authority to grant a downward-dispositional departure and place him on probation instead of imposing an executed prison sentence.

Crawford pleaded guilty to first-degree controlled-substance possession under Minn. Stat. § 152.021, subd. 2(a)(1) (2020), which provides that "[a] person is guilty of a controlled substance crime in the first degree if: (1) the person unlawfully possesses one or more mixtures of a total weight of 50 grams or more containing cocaine or methamphetamine." The relevant penalty provisions for that offense provide:

> (a) A person convicted under subdivisions 1 to 2a, paragraph (a), may be sentenced to imprisonment for not more than 30 years or to payment of a fine of not more than $1,000,000, or both.
> (b) If the conviction is a *subsequent controlled substance conviction*, a person convicted under subdivisions 1 to 2a, paragraph (a), *shall be committed to the commissioner of corrections for not less than four years nor more than 40 years*

6

and, in addition, may be sentenced to payment of a fine of not more than $1,000,000.

Minn. Stat. § 152.021, subd. 3(a)-(b) (2020) (emphasis added).

A "subsequent controlled substance conviction" means that

before commission of the offense for which the person is convicted under this chapter, the person was convicted of a violation of section 152.021 or 152.022, including an attempt or conspiracy, or was convicted of a similar offense by the United States or another state, provided that ten years have not elapsed since discharge from sentence.

Minn. Stat. § 152.01, subd. 16a (2020).

The parties do not dispute that the conviction resulting from Crawford's guilty plea to first-degree controlled-substance possession in this case constitutes a subsequent controlled-substance conviction.[3] Instead, the parties' dispute centers on whether the district court had authority to disregard the applicable mandatory-minimum sentence and to grant a downward-dispositional departure.

### *Crawford's Position*

Crawford argues that the district court was without authority to disregard the mandatory-minimum sentence in section 152.021, subdivision 3(b). Caselaw supports

---

[3] Crawford committed the underlying first-degree controlled-substance offense on November 23, 2021. In sentencing Crawford for that offense, the district court received and considered a pre-sentence investigation report. That report indicates that Crawford was convicted of a first-degree controlled-substance offense in 2006 and was not discharged from the sentence for that offense until November 2, 2021. Because Crawford was convicted of a violation of section 152.021 in 2006, before commission of the underlying offense, and ten years have not elapsed since his sentence was discharged for the 2006 offense, the underlying offense constitutes a "subsequent controlled substance conviction." *See* Minn. Stat. § 152.01, subd. 16a.

Crawford's position that the district court lacked such authority.

Mandatory-minimum sentencing statutes "prohibit a stay of execution of sentence and probation." *See State v. Adams*, 791 N.W.2d 757, 759 (Minn. App. 2010) (discussing Minn. Stat. §§ 152.022, subd. 3(b), .026 (2006)), *rev. denied* (Minn. Mar. 15, 2011). Thus, mandatory-minimum sentencing provisions restrict judicial discretion in sentencing. *See State v. Olson*, 325 N.W.2d 13, 18 (Minn. 1982) ("[T]he legislature may restrict the exercise of judicial discretion in sentencing, such as by providing for mandatory sentences . . . ."). The supreme court has rejected "the argument that the legislature must append language prohibiting waiver to every mandatory statute to ensure that the statute is given effect," reasoning that "[t]he canons of statutory construction provide that 'shall' is mandatory." *State v. Humes*, 581 N.W.2d 317, 319 (Minn. 1998); *see State v. Sheppard*, 587 N.W.2d 53, 56 (Minn. App. 1998) (applying *Humes* to consideration of a mandatory-minimum sentencing provision in Minn. Stat. § 609.11, subd 8(b) (1996), and stating that "[t]he legislature should not be expected to enumerate a prohibition against stayed executions in every mandatory sentencing statute, particularly when the mandatory language and removal of discretion is clear"), *rev. denied* (Minn. Jan. 27, 1999).

As to the application of mandatory-minimum sentencing provisions in the context of controlled-substance crimes, in *State v. Bluhm*, the supreme court held that "Minnesota Statutes [section] 152.025, subdivision 3(b) (2002), requires that a mandatory minimum six-month jail term be imposed and served when an offender has a previous qualifying controlled substance conviction." 676 N.W.2d 649, 650 (Minn. 2004). That penalty provision stated, "If the conviction is a subsequent controlled substance conviction, a

8

person convicted under subdivision 1 or 2 *shall* be committed to the commissioner of corrections or to a local correctional authority for not less than six months nor more than ten years." Minn. Stat. § 152.025, subd. 3(b) (2002) (emphasis added). The supreme court considered that statutory provision in conjunction with Minn. Stat. § 152.026 (2002), which stated that "[a] defendant convicted and sentenced to a mandatory sentence under sections 152.021 to 152.025 is not eligible for probation, parole, discharge, or supervised release until that person has served the full term of imprisonment as provided by law." *Bluhm*, 676 N.W.2d at 652 (quotation omitted).

The *Bluhm* court found that "[t]he language of sections 152.025 and 152.026 is clear and unambiguous," and it read that plain language "as mandating that an individual subject to the penalty provision in section 152.025, subdivision 3(b), be committed to a local correctional authority for a minimum of six months and that the sentence actually be served." *Id.* at 653. Thus, the supreme court rejected "Bluhm's argument that the sentencing court has the discretion to place a defendant being sentenced under section 152.025, subdivision 3(b), for a subsequent controlled substance crime on probation instead of committing her to the minimum term called for in that section." *Id.*

Like the supreme court, we have held that "In the absence of express authorization by the legislature, a district court is without authority to disregard a statutory mandatory-minimum sentence." *State v. Rausch*, 799 N.W.2d 19, 20 (Minn. App. 2011). In *Rausch*, we reversed the district court's grant of a downward departure, reasoning that the district court erred by failing to impose an applicable mandatory-minimum sentence. *Id.* at 21. The relevant statute in *Rausch* provided that "[a] person convicted of committing burglary

9

of an occupied dwelling, as defined in subdivision 1, clause (a), must be committed to the commissioner of corrections or county workhouse for not less than six months." Minn. Stat. § 609.582, subd. 1a (2010). We said that if "a statute is not ambiguous, it must be given its plain meaning" and that there was no ambiguity in section 609.582, subdivision 1a. *Rausch*, 799 N.W.2d at 22. In reversing Rausch's sentence because the district court failed to impose the mandatory-minimum sentence, we recognized that our reversal might "give rise to a motion to withdraw [the] plea as not voluntary or intelligent." *Id.* at 23.

Although the mandatory-minimum sentence in *Rausch* applied to the offense of burglary, we have also held that mandatory-minimum sentences applicable to controlled-substance offenses must be imposed. For example, in *State v. Turck*, we held that "[t]he mandatory-minimum sentencing provision for a repeat offender who commits a third-degree controlled-substance crime under Minn. Stat. §§ 152.023, subd. 3(b) (2004), and .026 (Supp. 2005), prohibits a district court from staying execution of the sentence." 728 N.W.2d 544, 545 (Minn. App. 2007), *rev. denied* (Minn. May 30, 2007).

The relevant statute in *Turck* provided that "[i]f the conviction is a subsequent controlled substance conviction, a person convicted under subdivision 1 or 2 *shall* be committed to the commissioner of corrections for not less than two years nor more than 30 years." Minn. Stat. § 152.023, subd. 3(b) (2004) (emphasis added). Like the supreme court in *Bluhm*, we considered the mandatory-minimum statutory provision in conjunction with the relevant version of section 152.026, which provided that "[a] defendant convicted and sentenced to a mandatory sentence under sections 152.021 to 152.025 and 152.0262 is not eligible for probation, parole, discharge, or supervised release until that person has served

10

the full term of imprisonment as provided by law." Minn. Stat. § 152.026 (Supp. 2005); *Turck*, 728 N.W.2d at 545. We stated that "[s]ections 152.023 and 152.026 require repeat offenders to serve a minimum prison sentence" and that "because respondent's sentence [was] for a subsequent controlled-substance offense, he must serve a term of imprisonment" that is not less than the statutory minimum. *Turck*, 728 N.W.2d at 548.

And in *Adams*, we held that "[t]he mandatory minimum sentencing provision for a repeat offender who commits a second-degree controlled-substance crime under Minn. Stat. §§ 152.022, subd. 3(b), .026 (2006), prohibits a district court from staying execution of the sentence." 791 N.W.2d at 757. The relevant statute in *Adams* provided that "[i]f the conviction is a subsequent controlled substance conviction, a person convicted under subdivision 1 . . . *shall* be committed to the commissioner of corrections for not less than three years." Minn. Stat. § 152.022, subd. 3(b) (2006) (emphasis added); *Adams*, 791 N.W.2d at 758. We once again considered the relevant sentencing statute in conjunction with section 152.026, which provided that "[a] defendant convicted and sentenced to a mandatory sentence under sections 152.021 to 152.025 . . . is not eligible for probation . . . until that person has served the full term of imprisonment as provided by law." Minn. Stat. § 152.026 (2006); *Adams*, 791 N.W.2d at 758-59. We determined that "[t]he language of the statutes is clear and unambiguous" and "mandate[s] that a repeat offender serve a minimum sentence of three years and is not eligible for probation until that time is served." *Adams*, 791 N.W.2d at 759.

We stated that "[b]ecause Adams's conviction in this case is a subsequent controlled-substance conviction, . . . sections 152.022, subdivision 3(b), and 152.026 mandate an

11

executed prison sentence of three years; they prohibit a stay of execution of sentence and probation." *Id.* We were quite clear: "The district court lacked discretion to place Adams on probation instead of committing her to the minimum term called for in section 152.022, subdivision 3(b)." *Id.*

Like the mandatory-minimum sentencing provisions in *Bluhm*, *Turck*, and *Adams*, the relevant statute in this case uses the mandatory term "shall" to require imposition of the mandatory-minimum sentence. *See* Minn. Stat. § 152.021, subd. 3(b) (stating that "a person convicted under subdivisions 1 to 2a, paragraph (a), *shall* be committed to the commissioner of corrections for not less than four years" (emphasis added)). And like the circumstances in those cases, Minn. Stat. § 152.026 (2020) provides that "[a] defendant convicted and sentenced to a mandatory sentence under section 152.021 . . . is not eligible for probation, parole, discharge, or supervised release until that person has served the full term of imprisonment as provided by law." We therefore do not discern a reason to treat the mandatory-minimum sentencing provision in section 152.021, subdivision 3(b), differently than the appellate courts of this state have treated similar mandatory-minimum sentencing provisions in the controlled-substance context.

### The State's Position

The state argues that because it did not charge the underlying controlled-substance offense with reference to the mandatory-minimum sentence in section 152.021, subdivision 3(b), that mandatory-minimum penalty does not apply. The state does not cite, and we are not aware of, any authority supporting that proposition. In fact, it is inconsistent with the

12

caselaw set forth above. And as set forth below, there are several flaws in the state's argument.

First, the state conflates the *elements* of the first-degree controlled-substance offense in this case with the *factor* necessary to trigger the mandatory-minimum sentence in section 152.021, subdivision 3(b). For example, the state argues that it "had ample opportunity to amend the complaint in this case to charge [Crawford] with a more severe *offense* . . . based on [his] prior first-degree possession conviction. The fact remains that the [s]tate chose not to do so." (Emphasis added.) The state notes that "a prosecutor has broad discretion in the exercise of the charging function and ordinarily, under the separation-of-powers doctrine, a court should not interfere with the prosecutor's exercise of that discretion." *State v. Foss*, 556 N.W.2d 540, 540 (Minn. 1996).

The state's reliance on charging discretion is unavailing because there is no attempt to interfere with that discretion here. The state charged Crawford with first-degree controlled-substance possession under Minn. Stat. § 152.021, subd. 2(a)(1). The elements of that crime are as follows: (1) a person unlawfully possesses (2) one or more mixtures of a total weight of 50 grams or more (3) containing cocaine or methamphetamine. *See* Minn. Stat. § 152.021, subd. 2(a)(1). The plain language of section 152.021, subdivision 2(a)(1), shows that the existence of a prior controlled-substance conviction is *not* an element of that offense. Instead, it is a sentencing factor that, if established, requires imposition of the mandatory-minimum sentence in section 152.021, subdivision 3(b). *Compare* Minn. Stat. § 152.021, subd. 2(a)(1) (defining the crime of first-degree possession of a controlled substance without mention of a prior controlled-substance conviction) *with*

13

Minn. Stat. § 152.021, subd. 3(b) (stating the penalty for a person convicted under section 152.021, subdivision 2(a)(1), is a mandatory commitment "for not less than four years" if the conviction is a "subsequent controlled substance conviction").

Second, the state fails to recognize that, although the state must generally prove aggravating sentencing factors beyond a reasonable doubt to a jury, there is an exception for prior convictions: "*other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *State v. Barker*, 705 N.W.2d 768, 771 (Minn. 2005) (emphasis added) (quotation omitted).

For example, the state argues that it "did not allege in the charging document (much less prove beyond a reasonable doubt) that a conviction on the charged offense would constitute a 'subsequent controlled substance conviction.'" But the state was not required to prove that Crawford had a prior controlled-substance offense to trigger the mandatory-minimum sentence under subdivision 3(b). The district court could make that finding based on judicial records. *See State v. Her*, 862 N.W.2d 692, 698 (Minn. 2015) (noting that "[t]he prior-conviction exception to the Sixth Amendment's jury-trial right . . . permits a court to find the existence of a prior conviction when sentencing a defendant so long as the prior conviction is not itself an element of the current offense" and that "[t]he exception is justified in part by the certainty of procedural safeguards attached to any fact of prior conviction" (quotations omitted)). Thus, we reject the state's argument that because it did not invoke the mandatory-minimum penalty provision in section 152.021, subdivision 3(b), "there was no basis in law or fact for the sentencing court to impose [that] penalty" and

14

Crawford therefore "was not subject to a mandatory minimum sentence for the instant offense."

Third, the state's assertion that it could usurp the district court's obligation to impose the mandatory-minimum sentence required under section 152.021, subdivision 3(b), is further weakened by the fact that subdivision 3(b) does not contain language authorizing the state to request sentencing without regard to the mandatory-minimum sentence. This absence is notable because a mandatory-minimum sentencing provision in another paragraph of section 152.021 allows the state to pursue sentencing without regard to that mandatory-minimum sentence. *See* Minn. Stat. § 152.021, subd. 3(c) (2020) (requiring a mandatory-minimum term of incarceration of 65 months and providing that "the prosecutor may, prior to the time of sentencing, file a motion to have the person sentenced without regard to the mandatory minimum sentence established by this paragraph"). The lack of a similar provision in subdivision 3(b) indicates that the legislature did not intend the state to avoid application of the mandatory-minimum sentence in subdivision 3(b).

Fourth, the legal authorities governing the content of a charging document do not require the state to cite or describe any applicable mandatory-minimum sentencing provisions. Although the criminal rules require the state to include the maximum penalty in a complaint, the rules do not require inclusion of any potential mandatory-minimum sentence. *See* Minn. R. Crim. P. 2.01, subd. 1 ("The complaint must specify the offense charged, the statute allegedly violated, and the maximum penalty. The complaint must also conform to the requirements in Rule 17.02."); 17.02 (requiring that "[a] complaint must be substantially in the form required by Rule 2" and that "[f]or each count, the indictment or

15

complaint must cite the statute, rule, regulation, or other provision of law the defendant allegedly violated").

Similarly, Minn. Stat. §§ 628.01-.69 (2022), which govern the contents of indictments and complaints, do not require the state to include information regarding any applicable mandatory-minimum sentence in the charging document. *See* Minn. Stat. §§ 628.10 ("The first pleading on the part of the state is the indictment, which shall contain: (1) the title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties; (2) a statement of the acts constituting the offense, in ordinary and concise language, without repetition."); .12 ("The indictment shall be direct and certain as it regards: (1) the party charged; (2) the offense charged; [and] (3) the particular circumstances of the offense charged, when they are necessary to constitute a complete offense.").

Finally, as to the content requirements of a charging document, the due-process "nature and cause requirement is satisfied if an indictment contains such descriptions of the offense charged as will enable a defendant to make his defense and to plead the judgment in bar of any further prosecution of the same crime." *State v. Dunson*, 770 N.W.2d 546, 551 (Minn. App. 2009) (quotations omitted), *rev. denied* (Minn. Oct. 20, 2009). The lack of any authority requiring the state to explicitly refer to a potential mandatory-minimum sentence in a charging document undercuts the state's assertion that its failure to do so renders the mandatory-minimum sentence inapplicable.

Fifth—and most importantly—the state's assertion that the state alone is entrusted to determine whether or not to impose the mandatory-minimum sentence in section

16

152.021, subdivision 3(b), fails to recognize the relative powers of the legislature, the judiciary, and a prosecutor in sentencing.

> The power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct is vested in the legislature. However, the imposition of the sentence within the limits prescribed by the legislature is purely a judicial function. . . . But once the legislature has prescribed the punishment for a particular offense it cannot, within constitutional parameters, condition the imposition of the sentence by the court upon the prior approval of the prosecutor.

*Olson*, 325 N.W.2d at 17-18 (citations omitted).

The *Olson* court stated that "[t]he separation of powers doctrine mandates that power given to [a] prosecutor . . . to initiate sentencing without regard to [a] statutory mandatory minimum sentence must also be given to the courts." *Id.* at 14. The supreme court explained that the law "must be interpreted to give courts and prosecutors alike the power to initiate sentencing without regard to statutory minimums. If the legislature gives such power to the prosecutors, it must also give it to the courts. It cannot constitutionally do otherwise." *Id.* at 19. The state's assertion that it can unilaterally prevent the district court from imposing the mandatory-minimum sentence under section 152.021, subdivision 3(b), is untenable given that a prosecutor cannot unilaterally interfere with the prescribed punishment for a particular offense. *See id.* at 18.

For these reasons, we reject the state's argument that, because it did not "invoke" section 152.021, subdivision 3(b), in its charging document, the mandatory-minimum sentence in section 152.021, subdivision 3(b), does not apply in this case. Because the

first-degree controlled-substance conviction resulting from Crawford's guilty plea was a subsequent controlled-substance conviction, the district court was required to impose a mandatory-minimum sentence of at least four years in prison under section 152.021, subdivision 3(b). The district court had no authority to ignore that mandatory-minimum sentence, to stay execution of a prison sentence and place Crawford on probation, or to impose an executed sentence of less than 48 months. *See Rausch*, 799 N.W.2d at 21 (reversing downward-dispositional departure because the district court had no authority to disregard the applicable mandatory-minimum sentence); *Turck*, 728 N.W.2d at 548 (reversing downward-dispositional departure because the applicable mandatory-minimum sentence required imprisonment); *Adams*, 791 N.W.2d at 759 (reversing downward-dispositional departure because the applicable mandatory-minimum sentence required imprisonment).

Having concluded that the district court could not disregard the mandatory-minimum sentence in Minn. Stat. § 152.021, subd. 3(b), we next consider whether Crawford's guilty plea was unintelligent and therefore invalid.

### *Validity of Crawford's Guilty Plea*

Several circumstances inform our decision regarding whether Crawford has shown that his guilty plea to first-degree controlled-substance possession was unintelligent and therefore invalid.

First, although the lawyers and the district court discussed the mandatory-minimum sentence in section 152.021, subdivision 3(b), at several hearings, those discussions regarded the state's assertion that it *could* have sought application of that sentence in the

18

underlying case.  Indeed, Crawford may have acknowledged that possibility.  But the state never did so, and it asserted—incorrectly—that the district court was therefore not required to impose the mandatory-minimum sentence under subdivision 3(b).

Second, as a result of the state's incorrect assertion that the district court was not required to impose the required sentence under subdivision 3(b), when Crawford tendered his guilty plea, the district court misinformed him that the maximum statutory sentence for his offense was 30 years.  Because the district court had no authority to disregard the mandatory-sentencing requirement, the statutory maximum sentence was 40 years.  *See* Minn. Stat. § 152.021, subd. 3(b).

Third, as a result of the state's incorrect assertion that the district court was not required to impose the mandatory-minimum sentence under subdivision 3(b), when Crawford tendered his guilty plea, he was not informed that he was subject to that mandatory-minimum sentence, which required his commitment to prison for at least 48 months.  *Id.*  Nor was he informed that the district court could not disregard the mandatory term of imprisonment, either by placing him on probation or by imposing a prison term less than 48 months.  Instead, the district court informed Crawford that it would consider his request for "something less than the guidelines," implying that the district court could in fact grant a downward sentencing departure despite the mandatory-minimum sentence. The district court had no authority to do so.

Fourth, the record does not contain a petition to plead guilty clarifying or correcting the misinformation that Crawford received prior to tendering his guilty plea.  *See Perkins v. State*, 559 N.W.2d 678, 690 (Minn. 1997) (concluding, despite defendant's contrary

19

assertions, that the record established that when defendant pleaded guilty, he understood the maximum sentence that could be imposed, based in part on his signature on a petition to plead guilty, which correctly stated the maximum penalty).

On this record, Crawford has established that he was not informed that the direct consequences of his guilty plea to first-degree controlled-substance possession included a mandatory term of imprisonment of at least 48 months. Instead, he was incorrectly led to believe that the district court could ignore that mandatory-minimum sentence, grant a downward-dispositional departure, and place him on probation simply because the state did not request application of the mandatory-minimum term of imprisonment. Again, the district court could not do so. Thus, Crawford has shown that his guilty plea was unintelligent and therefore invalid, and he is entitled to withdraw his guilty plea to first-degree controlled-substance possession.

## DECISION

Because Crawford's guilty plea to first-degree controlled-substance possession was unintelligent and therefore invalid, we remand to allow Crawford to withdraw that guilty plea if he chooses to do so. If Crawford withdraws his guilty plea to first-degree controlled-substance possession on remand, the district court shall vacate his conviction for that offense. Although Crawford does not specifically address the validity of his guilty plea to felony fleeing, his brief suggests that he should be allowed to withdraw that guilty plea on remand as well. Because it is not clear that the district court would have accepted Crawford's guilty plea to felony fleeing in the absence of his guilty plea to first-degree controlled-substance possession, if the district court vacates Crawford's judgment of

20

conviction of first-degree controlled-substance possession on remand, it may also vacate his judgment of conviction of felony fleeing. *See State v. Goulette*, 258 N.W.2d 758, 762 (Minn. 1977) ("Neither the constitution nor our Rules of Criminal Procedure give to a criminal defendant an absolute right to have his plea of guilty accepted.").

**Reversed and remanded.**